The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Would you all please be seated. Our next case is Ott v. Maryland Dept of Public Safety. Ms. Cokie? Mr. Cokie? All right. We'll be glad to hear from you. Thank you, sir. I am Robin Cokie. I'm counsel for the appellant, and oddly this is another Wicomico County, Maryland case dismissed by Judge Bennett. Ms. Ott formerly was a state employee, and she brought workplace claims against the state under both the ADA and the Rehab Act. The state asserted 11th Amendment immunity as to the ADA claims and persuaded the district court to dismiss the Rehab Act claims as untimely. In doing so, the district court borrowed the two-year statute of limitations from Maryland's Fair Employment Practices Act, or FIPA as it's called, and ruled as a matter of law that Ms. Ott's claims were not equitably told. With the court's permission, I'll address first the equitable tolling issue because, of course, if her claims were equitably told, then on this timetable it did matter whether there was a two-year statute or a three-year statute. And I'll also begin, if I might, by observing that in debating whether Ms. Ott gets her day in court, we're not debating the fate of tenuous or marginal claims. As the court knows from the sealed portions of the joint appendix and the briefs, Ms. Ott alleged that she had been subjected to horrific harassment, which her boss knew about and abetted. Everybody involved was a state employee, and the state had its own fair practices officer investigate the claims and the fair practices officer concluded they were well-founded, as later did the federal EEOC. So they're not simply compelling claims. They're also plausibly plausible claims, and they're claims which she pursued diligently. She regarded her claims as ADA claims because, of course, everybody's heard of the ADA, but few lay people have heard of the Rehab Act. So she doggedly pursued the- But what we've got here is a time bar. Yes, sir. That's correct, Your Honor. And I notice that the light is not on. Oh. Go ahead. You've just got bonus minutes. Well, shucks. That's the first break I've gotten in this case, Your Honor. I'm glad we could give it to you. That's very kind of you, sir. The administrative process with the EEOC is, I'd say it's a bit of a labyrinth. You have to file a notice. It has to be within a deadline, and you have to go through an investigative process. There are other timetables that apply, and she hung in there every step of the way, and eventually the EEOC entered a finding of probable cause. Now, Judge Bennett mistakenly thought that at that point she could have filed suit, but the process instead is that the case is sent to the Department of Justice because there's a governmental respondent. Now, the Department of Justice then entertains filing suit. Sometimes it takes them a while, and in this case it took them almost a year. When they declined to file suit, they sent it back to the EEOC, who promptly issued a right to sue. Ms. Ott promptly retained a date, and I promptly filed suit. Now, I did file suit in part under the ADA because although the state of Maryland had participated actively in every step of the EEOC process, including filing a position statement, they had never asserted 11th Amendment immunity. And I concluded that that was, therefore, one of those cases where they consent to sue, and so I made ADA claims. I also made Rehab Act claims, and at that point it had been two years and about six months since her separation from employment. But at that point in October of 2016, the leading case on this issue was the Giandron case, J-E-A-N-D-R-O-N, in which this court held that Maryland's general three-year statute of limitations applied to Rehab Act claims in Maryland. So off we went, and I was shocked when the state moved to dismiss, asserting for the first time that they were immune under the 11th Amendment. And I was shocked in part because it struck me as a strategic delay. It struck me as cynical because, of course, if the state at any point... So are you leading up to equitable tolling? I am, sir. Equitable tolling, Your Honor. And my point, respectfully, is that if the EEOC had known that the state was asserting qualified 11th Amendment immunity, that would have stopped the process, and it would have been well within the two-year statute. That would have stopped the ADA process. Correct, Your Honor. But, of course, you don't have an exhaustion requirement under the Rehab Act. Right, but she would have then lawyered up, and the lawyer would have said, well, there's this thing called the Rehab Act, which gives you the same rights and remedies, and there's no administrative exhaustion process. So she could then have filed suit within the two-year margin. So the state, in deferring... So what are your extraordinary circumstances for equitable tolling purposes here? Well, it goes as follows. Number one, you know, she had PTSD, was acting without a lawyer, and in my view was encouraged by the state to regard this as an ADA process, which she had to work her way through. And by the time she had gotten through that process, the state then said, well, the bad news is that we're now asserting 11th Amendment immunity, even though we could have done so all along. And the worst news is that it's now too late to file under the Rehab Act because it's more than two years. So my point, Your Honor, is that this is a case which, in a court of equity, would be treated by the chancellor as a latches case, where the defendant strategically delays... Right, but to assert equitable tolling, that's a pretty hot barrier. Well, I think this is a pretty disturbing case, Your Honor. I mean, her claims of truly sadistic harassment, which were well-founded, apparently, because... This doesn't go to, you know, the merits of the claim. It goes to, well, what were the extraordinary consequences or the extraordinary circumstances that prevented a plaintiff from filing on time? And I don't think the circumstance of the discriminatory conduct is really relevant to that. Well, I would argue respectfully that the weight of the claims and their plausibility is a factor which the chancellor would take into account. Also, the brevity of the delay. We're not talking about a time frame in which evidence got stale or witnesses went missing. We were well within the three years marshalling the same body of evidence, you know, each time so that there's no prejudice to the state who had timely, you know, effective notice every step along the way. And so not only was the state not prejudiced and not only is there no staleness or problem attributable to delay, but in fact I would suggest to the court that the delay in this case was attributable to the defendant, not to the plaintiff, because if the defendant had not artfully withheld its 11th Amendment sort of trump card, then the EEOC process, which was a waste of time for everybody, including two federal agencies, would have stopped and Ms. Ott would then have retained counsel and would have timely asserted her Rehab Act claims. Well, the 11th Amendment is a bar to court jurisdiction. It's not a bar to administrative action. I'm not sure about that, Your Honor. An interesting question. Of course, if you read the 11th Amendment literally, it doesn't mean what we all think it means. Correct. But it says citizens can't sue a state and federal court. Right. But, you know, I mean, if the state is the target of a discrimination claim under the ADA and as soon as it hits the EEOC, if they're really trying to deal with this as a fair, straightforward matter, I would think they would say, well, we're immune from suit. And at that point the EEOC is going to say, well, you know, we don't have any real teeth. We can't actually enter a judgment, can't, like, issue, you know, anything that could be effective in giving compulsory relief to the plaintiff. So the EEOC would have ended the proceeding. She would have hired a lawyer. The lawyer would have advised her accurately. And she would have filed suit well within the two years. So my point today in answering Your Honor's question about how is this extraordinary, how is this that unusual case, is that this is a case in which the state, instead of saying, well, this is a pretty awful situation, let's deal with it, instead basically danced her off the stage. The state, you know, strategically delayed its assertion of immunity on this ADA claim that she was, like, pushing gradually through the EEOC. The state put it off until she no longer had an alternative. They, you know, my analogy would be the state held its whole card until she put her cards on the table. And then they said, well, sorry, it's too late. And the... That happens in cards sometimes. It does, Your Honor. It happens in litigation sometimes. Yeah, it was a poor metaphor for me because really my point about her claims is that, you know, this woman has been through a horrific, awful, terrible, tragic process. And instead of helping, you know, the state, you know, fostered and enabled people who were making this awful, awful experience worse. And the state, instead of addressing her claims and helping to remedy them, even though it had determined that they were well-founded, basically sucker-punched her. They basically said nothing until it was too late for her to pursue any alternatives. And they said, basically, we got you. Well, how did they know she was going to file a Rehab Act claim? Well, she could have because as... How did they know she was going to do that? Well, if they had said, well, you're a man, you can't pursue an ADA claim, you know, they're lawyers. They know the Rehab Act exists. They know she's going to go to a lawyer. You know, some lawyers at least know the Rehab Act exists. So they know if they block her ADA pursuit, they're going to push her, you know, like water that's impeded into the other channel. And she would have had plenty of time to assert her Rehab Act claim and to meet even a two-year deadline. But for a chance, we were not amenable to the equitable tolling claim. That brings you back to which is the proper statute of limitations. Right. So why don't you tell us about that? Well, as I've already said, when I filed suit, Giandran, if I'm pronouncing it rightly, was the leading decision. It was an unreported case from 2013. And it said Rehab Act claims in Maryland are governed by that state's general statute of limitations, which is three years. And that was decided after the change to the Maryland statute. Is that correct? No, it was, well, yes, actually, I think it was. It was decided after the change to the Maryland statute to reduce the statute from three to two. Correct. I think that's right. The events in that case were affected by the earlier three-year statute. Right. Not the two-year statute. Yeah, in that case, right. But all we knew about this subject at that time, we knew from this Giandran opinion. Right, but you were on notice as to the Maryland statute. Right, but no one had ever decided. No court had, at that point, decided that the two-year statute of limitations in Maryland's Fair Employment Practices Act would apply to workplace claims under either the ADA or the Rehab Act. Now, in Seminole, which came out in January of 2017, so it came out while Ms. Arnquist and I were briefing the motion to dismiss, this court said that a public accommodation claim under the ADA was governed by Maryland's general three-year statute of limitations and not by the two-year statute of limitations under FEPA, the Fair Employment Practices Act, because FEPA doesn't address workplace, excuse me, it doesn't address public accommodation issues. So the state argued inferentially that since FEPA does govern workplace disability claims, its two-year statute of limitations ought to govern such claims under the ADA or the Rehab Act. Well, and Judge Bennett agreed. It's a better argument, in my view, with the ADA because the ADA, like FEPA, has this administrative choreography that you have to go through where you file a notice within a deadline with an agency and they kind of work it up and then there are more deadlines and more filings and eventually there's like the last deadline. I thought that you had conceded that this MIFA statute is the state equivalent. No, Your Honor. I argued in my brief that FEPA, at least its statute of limitations, is not analogous to the way Rehab Act claims are handled for the following reason. Well, I thought the test was that it's the statute with regard to the substantive claims. Well, and similar remedies, and I would argue that there is a difference here. You argued it as a condition preceding, not a time bar. But that's a separate question from whether or not the Maryland statute is the state equivalent with respect to rehabilitation claims. I thought you had conceded that part. Not exactly. And my answer goes like this. There's a difference between the Rehab Act on the one hand and both the ADA and FEPA, the Maryland law, on the other. And that both the ADA and like Title VII and FEPA and a lot of civil rights laws have administrative exhaustion requirements that you have to file with an agency, you have to do so within a deadline, and so on. The Rehab Act does not. And I would argue that that is not really a distinction, that it's a meaningful difference, because clearly Congress intended that this law, which applies singularly to governmental employers and employers who get federal funding, that they not have to go through those roadblocks and those speed bumps and meet those filing and deadline requirements. So the FEPA two-year statute of limitations condition preceding, whatever you call it, is a part of the administrative exhaustion process under FEPA, which we don't have for the Rehab Act. So if Congress didn't impose it, why should federal courts let the Maryland legislature impose it? And so I'm contending at bottom that there is an important substantive difference between the way Congress intended claimants to be able to proceed and the velocity with which they proceed and the ease with which they proceed against a governmental employer that you don't see in FEPA or, for that matter, in the ADA. The Rehab Act is rather like Section 1983 in that you can just go ahead and file suit. You don't have to go through the EEOC or the State Commission on Civil Rights. And with 1983, as we know, we apply the three-year statute of limitations. And I see I've run into my own time. Does the Maryland statute require that discrimination be solely by reason of disability or just because of disability? Just because, which is not signed clear in the law, but the cases that kind of tease that out. Thank you. Thank you, sir. Thank you very much. Ms. Arnquist. Thank you. Lisa Arnquist with the Office of the Attorney General of Maryland. Has there anybody left the AG's office in Maryland that's not down here today? Just a couple of us. Okay. The Maryland Fair Employment Practice Act is the most analogous to the Rehabilitation Act, and the lower court was correct in applying the two-year statute of limitations. The outcome of that issue, the sole legal issue presented, is controlled by two cases decided by this court, one in 1993 and the other in 1994. In Wolski v. Medical College of Hampton Roads, this court declined to follow the decisions of numerous other sister circuits and held that in Virginia the one-year statute of limitations for the Virginia Rights of Persons with Disabilities Act would be applied to a plaintiff's Rehabilitation Act claim, as opposed to the applicable general personal injury statute. What case is that? That's Wolski v. Medical College of Hampton Roads, and it's the first enunciation by this court of that principle. The next year, in the case of McCullough v. Branch Banking and Trading Company, this court applied the North Carolina Handicapped Persons Protection Act to a Rehabilitation Act claim. And North Carolina's act had a 180-day limitations period. In McCullough, the court described the two-step process that I believe Your Honor was referring to in deciding what is the appropriate statute of limitations to apply to a federal civil rights action. And the first step is to select the state statute, quote, most analogous to the federal claim. And second, once that's been identified, the court has to look and determine whether application of the state's law would be consistent with the federal statutes and its underlying policies. The first prong, Judge Bennett was absolutely correct. Maryland's FEPA is most analogous to the plaintiff's claims. Maryland's act was enacted to redress the same type of discrimination, employment discrimination based on disability, aimed at prohibiting the same conduct, and aimed at protecting the same group of individuals. Significant amendments to Maryland's act occurred in 2006, the most significant amendment, and that is when the remedies available under Maryland law were brought into parity with the remedies available under the Rehabilitation Act case. Effective 2006, a plaintiff bringing a claim under Maryland's FEPA has a right to a jury trial, compensatory damages, punitive damages, but not against the state, attorney's fees, costs, expert witness fees, and statutory authority for the state court to appoint an attorney if the plaintiff is unable to pay for an attorney. In 2009, three years later, the Maryland General Assembly moved to bring FEPA into full alignment with the ADAA and expanded the definition of disability under Maryland law to include those that are regarded as having a disability, those that have a record of having such a disability, and also to require the reasonable accommodation in the workplace. And so effective 2009, Maryland's law is spot on. So that predates the acts of alleged discrimination in this case. Yes, yes. And in terms of the reference to the case law that was cited by Mr. Cockey, there's no case in which this court, or any of the lower courts relied upon, addresses the analysis after Maryland's act had been amended. And in Girardin, an unreported decision, there's no analysis at all. It's just essentially a citation to pre-amendment decisions of the lower courts. So the facts of Girardin took place when the Maryland law was in its embryonic form. Very different. It had no right to any civil right of action, and it had a limitations period of six months. So Girardin didn't address this after these amendments, and no lower court decision did either. There's no law on it. But what was clear is the clear enunciation in Wolsky and McCullough that was 20 years before the initiation of this lawsuit of what the law is in the Fourth Circuit. And that is once you bring us a Maryland state statute that is in parity with the federal in terms of remedies and in terms of scope, then that's what we're going to apply. So in the second prong of the analysis, there can be no reasonable argument that applying FEPA's two-year statute of limitations would in any way contravene the purpose of the Rehabilitation Act because this court has already sanctioned the application of Virginia's one-year limitation period and North Carolina's 180-day limitations period and found that a short period of statute of limitations is not inconsistent with the federal act's purpose. Furthermore, Maryland's law is much closer to the Rehabilitation Act than North Carolina's law was in McCullough. For instance, in McCullough, the statute that this court found to be the most analogous to the Rehab Act didn't permit a jury trial, limited damages to injunctive relief and backpack, had a different base of application. In Maryland, the court has been very careful to say you don't have to have an exact equivalent for purposes of the borrowing statute. You have to have the most analogous. But Maryland's law is a much closer fit. In fact, I think it is probably the mythical equivalent of the Rehabilitation Act case if it doesn't go further and ensure greater rights to the disabled in our state. So that would give a two-year statute of limitations and the claim here was beyond that. Yes, and that's not disputed. So that brings you to equitable tolling. Okay. This is not a case that presents extraordinary circumstances to justify equitable tolling. The extraordinary circumstances test requires extraordinary circumstances which we have not heard, but secondly, beyond the control or external to the control of the plaintiff, which we have not heard, that prevented the filing on time. So none of the three prongs are met in this case. He says you tricked him into waiting or tricked her into waiting. No. So what do you think about that? Well, I don't think that's a fair characterization. The right to immunity under the 11th Amendment is not something that could be waived by participating in an administrative proceeding. As Your Honor has already noted. Well, you didn't waive it, but he says if you told him earlier he would have filed a lawsuit or he would have filed his Rehab Act suit. That's not true. The state of Maryland participates in claims brought of alleging discrimination by the EEOC, for one thing, because we're not sure. We don't take it that because eventually we may have a right to assert 11th immunity under one provision of the ADA in federal court that we have no obligation to participate in the administrative process before the EEOC. For one thing, because there's a sharing agreement between Maryland's equivalent of the EEOC and the EEOC, and we don't know if the claim will ultimately be brought under which statute and what court, or if the claim will be asserted under Rehabilitation Act. We don't know. We don't monitor, and it's not the state's job to monitor what potential deadlines could be coming up or to make arguments. So your ADA participation, is that a prerequisite to suit in Maryland as well, in Maryland State Court? I'm sorry, Your Honor. Can you get sued in state court in Maryland for a violation of Maryland's equivalent of the ADA? Yes. And would this participation in the administrative process be a prerequisite to that? Yes. In Maryland, you have to participate in the administrative process. But that brings me to another argument that was raised, the attempt to distinguish the two statutes by saying, well, Maryland does have an administration exhaustion requirement. This court's already addressed that in the JSXRAL DUC versus Isle of Wight decision that's cited in our brief in 2005, in which the court, again, borrowed the one-year limitation from Virginia's disability statute. And then the argument was made, well, they have a notice provisions part in the state statute, so the state in that case tried to say, well, you didn't adhere to that exhaustion requirement. And this court said, no, it's a separate and distinct issue. The fact that there may be an exhaustion requirement, because there's also one in the North Carolina law that was the most analogous, doesn't mean that it's inappropriate to borrow the time and the statute of limitations under the Wilson versus Garcia analysis. So those arguments that are being made to attempt to distinguish these two statutes have already been rejected by this court in that decision. But there is, I'm sure I understand your answer to Judge Gibney, with respect to the Rehab Act part of the claim, the NIFA statute for rehab analog claim requires an effective administrative exhaustion? No, that's what I'm saying, it doesn't. It only goes to an ADA type claim, but not to a Rehab Act type claim. You don't have a Rehab Act type claim in Maryland law. What you have is Maryland's equivalent of the ADA. Yes, but I'm not sure I'm understanding the question. If you file in Maryland in Maryland court under the Maryland Act, you have to exhaust. For purposes of this analysis, everybody knows in Federal Rehab Act you don't have to exhaust. For purposes of this analysis, under the McCullough and Wolski. So you say under that it's irrelevant. Yeah, it's irrelevant. You don't have to. Your sole inquiry under the Wilson-Garcia Supreme Court precedents, as interpreted by Wolski and McCullough by this court, is only to look at the statute most analogous solely for purposes of borrowing the time period that the Maryland General Assembly determined to be the appropriate place to cut the balance between repose and enforcement policy of the statute. On equitable tolling again, this court has already said that mistake of a party's counsel in interpreting a statute of limitations does not represent extraordinary circumstances beyond the party's control where equity would step in and equitable tolling should be applied. That's Harris v. Hutchinson, Fourth Circuit, 2000. Again, this is not an extraordinary circumstances case. This is more in the nature of, unfortunately, garden variety excusable neglect. That's how that was characterized by this court in these equitable tolling cases. Does the court have any questions? Thank you very much. Thank you. Mr. Kaki, you've got a little time left in rebuttal. Thank you, Your Honor. I don't think Ms. Ott was guilty of any kind of neglect, excusable or otherwise. I think she proceeded admirably, grief-stricken, diagnosed repeatedly with PTSD, and as Judge Gibney identified when he restated his question, she wasn't aided by counsel. So she got tricked. It wasn't that her lawyer was fooled. She was, in my view, taken advantage of because the state, in sort of pacing through this administrative process with her, gave rise to what I interpreted, at least, as consent to sue. She thought that they were taking a position that she didn't like in the case. They were opposing her, even though their own fact finder had decided her way. But she was led, I think, reasonably to conclude that they were working with her to resolve her claims within the framework of the ADA. And when she brought her case to me, I concluded the same, that they were not asserting 11th Amendment immunity. And, of course, I also knew that if they had asserted it at an early enough time, not to waste the efforts of all the public servants involved with EEOC and the Department of Justice and also this poor lady who's just trying to get redressed for some pretty awful misconduct, that we could probably have pursued her claims through the Rehab Act. We would have had time to do it. And so if the doctrine of equitable tolling isn't to be sort of in the dustbin with all these maxims of equity that we learned about in law school and then forgot about, it has to mean that the state, who we're supposed to be able to turn to for some kind of help, can't effectively play gotcha with this lady. And so to answer the question posed a long time ago by Judge Agee, what are the extraordinary circumstances? You have an extraordinarily deserving, extraordinarily diligent litigant who is led reasonably to believe that she's doing everything she needs to do to assert her claims under the ADA and therefore doesn't assert them under the Rehab Act, which, again, few lay people have ever even heard of. So for those reasons, I would ask the court to act as the Chancellor would do and to enable Ms. Ott to have her day in court. Thank you, Your Honors. All right. Thank you very much. We'll come down and greet counsel and go to our last case.
judges: G. Steven Agee, Henry F. Floyd, John A. Gibney Jr.